70 F.3d 1263
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robbie L. STACY, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-2535.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 28, 1995.
Decided Nov. 22, 1995.
 
 ARGUED: Martin Douglas Wegbreit, CLIENT CENTERED LEGAL SERVICES OF SOUTHWEST VIRGINIA, INC., Castlewood, Virginia, for Appellant. William Brian Reeser, Assistant Regional Counsel, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Philadelphia, Pennsylvania, for Appellee. ON BRIEF: Charlotte Hardnett, Chief Counsel, Region III, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Philadelphia, Pennsylvania; Robert P. Crouch, Jr., United States Attorney, John F. Corcoran, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 Before RUSSELL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and BEATY, United States District Judge for the Middle District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Robbie Stacy ("Stacy") seeks review of a decision by the Secretary of Health and Human Services ("the Secretary") affirming the denial of his application for supplemental security income benefits ("SSI") pursuant to the Social Security Act ("the Act"), as amended, 42 U.S.C. Sec. 1381, et seq. The district court agreed finding that the substantial evidence supported the administrative law judge's ("ALJ") decision that Stacy was not "disabled" as defined by the Act. We affirm.
 
 I.
 
 2
 On November 12, 1991, Stacy filed an application for SSI based on an alleged disability and inability to work. After Stacy was denied SSI by the Virginia state agency, he requested a hearing before an ALJ. On October 8, 1992, a formal hearing was held before the ALJ.
 
 
 3
 In deciding that Stacy was not entitled to SSI, the ALJ relied heavily on the records of Dr. Patel and Dr. Pantaze. Dr. Patel, a psychiatrist, treated Stacy from March 10, 1988 to January 8, 1992. Dr. Patel's medical notes revealed an improvement in Stacy's condition. Dr. Pantaze, a licensed psychologist, conducted an examination of Stacy on June 8, 1992. Dr. Pantaze concluded that Stacy was capable of employment-related activities. Later, at the request of his attorney, Stacy was also examined by Dr. Ballas, a licensed psychologist. Dur ing his examination, Dr. Ballas administered several tests. One of the tests, the Minnesota Multiphasic Personality Inventory-2 test ("MMPI-2"), showed a very low K score which was noted by Dr. Ballas to be "possibly a function of exaggeration of symptomatology." (J.A. at 271.) The ALJ reasonably concluded from Dr. Ballas' terminology that the low K score indicated an extreme faking of symptoms. After reviewing Dr. Ballas' records, the ALJ found that Dr. Ballas' medical assessment of Stacy's ability to work was not the most probative evidence of Stacy's residual functional capacity to perform workrelated activities. After the hearing, Stacy submitted a report from Dr. Scharf. Dr. Scharf found that Stacy's ability to do work-related activities on a day-to-day basis in a regular work setting was seriously limited or completely useless. The ALJ concluded that there was no evidence that Dr. Scharf had treated Stacy. Therefore, since Dr. Scharf's findings were inconsistent with the record as a whole, the ALJ found that Dr. Scharf's opinion was of no probative value.
 
 
 4
 At the hearing, the ALJ heard testimony from Dr. Russell F. West, a vocational expert. Dr. West indicated that even with Stacy's restrictions, there were a significant number of jobs which Stacy could perform. Specifically, Dr. West cited security guard, machine presser, and video retail clerk. Dr. West also stated Stacy could work as an automotive parts salesperson, as he had done in the past.
 
 
 5
 After weighing the different conclusions made by Dr. Patel and Dr. Pantaze versus Dr. Ballas, the ALJ found Dr. Patel and Dr. Pantaze's records to be more probative on Stacy's ability to perform workrelated activities. The ALJ concluded that Stacy was not "disabled" as defined by the Social Security Act, denied SSI, and the Secretary affirmed.
 
 II.
 
 6
 On appellate review, we must accept the ALJ's factual findings unless the facts are not supported by substantial evidence. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir.1972). Thus, the clearly erroneous standard applies to the findings of fact made by the ALJ and accepted by the Secretary and the district court.
 
 
 7
 In determining whether a claimant is "disabled" under the Act, the Secretary engages in a five-step evaluation: (1) whether the claimant is working, (2) whether the claimant suffers from severe impairment, (3) whether the claimant's impairment meets or equals a listed impairment, (4) whether the impairment prevents the claimant from returning to past relevant work, and (5) whether the claimant can perform other work. 20 C.F.R. Sec. 416.920; see Bowen v. Yuckert, 482 U.S. 137 (1987). In this case, the only issue that needs to be addressed is the fifth step of the evaluation also known as the claimant's residual functional capacity. 20 C.F.R. Sec. 416.945. Residual functional capacity is what a claimant can still do despite his or her limitations. 20 C.F.R. Sec. 416.945(a).
 
 
 8
 After reviewing the record, we find that the ALJ's factual findings that Stacy is not "disabled" under the Act are supported by substantial evidence within the record. The ALJ in reaching this conclusion gave more credence to Dr. Patel's medical evaluation. The ALJ relied on Dr. Patel's findings because Dr. Patel had treated Stacy from 1988 to 1992--a total of four years prior to his application for SSI benefits. See 20 C.F.R. Sec. 416.927(d)(2)(i) (providing that more weight is given to a medical opinion where treating source has spent a significant amount of time treating claimant); see also Grizzle v. Pickands Mather and Co./Chisholm Mines, 994 F.2d 1093, 1097 (4th Cir.1993) ("[A]s a general matter the opinions of treating and examining physicians deserve especial consideration."). The ALJ properly found that Dr. Patel's reports provided sufficient evidence of Stacy's mental and physical ability to work. The ALJ also found the evaluation performed by Dr. Pantaze to be very probative. Based on his observations, Dr. Pantaze concluded that Stacy was capable of employment related activities. The ALJ, as the factfinder, discounted Dr. Ballas' opinion because it conflicted with Dr. Ballas' own objective observations and the medical assessments made by Dr. Patel and Dr. Pantaze. See Grizzle, 994 F.2d at 1096 (noting that subject to the substantial evidence requirement, the ALJ is permitted to give more weight to certain evidence, make credibility determinations, and resolve evidentiary inconsistencies).
 
 
 9
 Stacy argues that the district court erred when it failed to consider Dr. Pantaze's inferior qualifications. However, we find that Stacy has waived the argument concerning Dr. Pantaze's credentials by failing to raise this issue below. See Pleasant Valley Hosp. Inc. v. Shalala, 32 F.3d 67, 70 (4th Cir.1994) (finding that failure of appellant to raise issue during administrative hearing and before district court operates as a waiver by the appellant of appellate review); see also Director, Office of Workers' Compensation Programs, etc. v. North American Coal Corp., 626 F.2d 1137, 1143 (3d Cir.1980) ("[A] court should not consider an argument which has not been raised in the agency proceedings which preceded the appeal, absent unusual circumstances.").
 
 
 10
 Finally, although the ALJ rejected Dr. Ballas' opinion, the ALJ did note the high scores on the other tests administered by Dr. Ballas, and concluded that the low K score on the MMPI-2 test was a significant indicator of extreme faking of symptoms. In arguing that the ALJ exceeded his authority when he concluded that there was a significant indication that Stacy was faking his symptoms, Stacy asserts that the low K score on the MMPI-2 test must be interpreted and analyzed by a medical doctor and not an ALJ. We disagree. The ALJ did not make a medical judgment nor exceed his authority. Instead, the ALJ, just as any reasonable unbiased factfinder, gave a plain meaning to the phrase "exaggeration of symptomatology" and rationally concluded that there was a possibility that Stacy was malingering or faking his symptoms.
 
 
 11
 After carefully considering all of the evidence and Stacy's recent education, the ALJ properly found that there were a significant number of jobs in the national economy which Stacy could perform which did not exceed his residual functional capacity to perform a limited but wide range of light work activities.
 
 III.
 
 12
 We have often stated that our duty is not to substitute our view of the evidence for that of the ALJ, but simply to guarantee that the ALJ has faithfully adhered to the law. Grizzle, 994 F.2d at 1099. With this overriding principle in mind, we conclude that there is substantial evidence to support the ALJ's ruling that Stacy, notwithstanding his physical and mental impairments, maintains a residual functional capacity to perform work-related activities.
 
 AFFIRMED