UNPUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

IMPERIAL COLLIERY COMPANY,
Petitioner,

v.

NORMA TICHENOR, widow of Hope
O. Tichenor, deceased; HANSFORD

No. 98-1310

COAL COMPANY, West Virginia CWP
Fund; DIRECTOR, OFFICE OF
WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF
LABOR,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(97-584-BLA)

Submitted: August 18, 1998

Decided: September 9, 1998

Before NIEMEYER and HAMILTON, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

COUNSEL

William S. Mattingly, JACKSON & KELLY, Morgantown, West
Virginia, for Petitioner. Don M. Stacy, Beckley, West Virginia; Mar-

vin Krislov, Deputy Solicitor, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, Jennifer U. Toth, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Imperial Colliery Company seeks review of the Benefits Review Board's ("BRB's") affirmance of an award of federal black lung benefits to Hope O. Tichenor.[1] Specifically, Imperial argues that the administrative law judge incorrectly determined that Tichenor developed complicated pneumoconiosis while employed at Imperial, and alternatively, that, even if Tichenor's complicated pneumoconiosis arose during his employment with Imperial, it still is not the "responsible operator." Because we find that substantial evidence supports the ALJ's determination that Tichenor developed complicated pneumoconiosis while employed at Imperial, we affirm the BRB's order. We decline to address Imperial's alternative argument that it is not the "responsible operator," as that issue was not raised below.

I.

Tichenor, who died in 1988, had a thirty-nine year history of coal mine employment. After working for numerous coal companies, he was employed by Imperial as a fire boss and mine foreman on strip mines from 1969 until June 4, 1978. On June 5, 1978, Tichenor began

_____

[1] Tichenor died in 1988 while his claim was pending. His widow, Norma Tichenor, is eligible for survivors' benefits based upon the successful prosecution of the miner's claim. See 20 C.F.R. § 725.212 (1997).

employment with Hansford Coal Company, for whom he worked until 1986.

In June 1976, while employed by Imperial, Tichenor filed an application for federal black lung benefits. The district director made an initial finding that Tichenor was entitled to benefits due to the presence of complicated pneumoconiosis, and that Imperial was the putative responsible operator.[2] After Tichenor began working for Hansford, the district director notified Hansford that it was also being held as a responsible operator in Tichenor's claim. The claim was eventually referred to an ALJ.

In March 1989, an ALJ issued a decision awarding benefits to Tichenor. The ALJ determined that Tichenor suffered from complicated pneumoconiosis as of July 7, 1976, and that, because Tichenor did not begin his employment with Hansford until 1978, Imperial was the sole responsible operator. Imperial appealed to the BRB, who, in April 1994, affirmed the ALJ's decision. Imperial then requested reconsideration of the BRB's decision on the basis that the ALJ had incorrectly relied upon the "true doubt" rule.[3] The BRB subsequently reversed its prior determination, vacated the award of benefits, and remanded the case so that the ALJ could reweigh the evidence without relying on the "true doubt" rule.

On remand, an ALJ again determined that Tichenor was totally disabled due to complicated pneumoconiosis beginning July 7, 1976, and that Imperial was liable for Tichenor's black lung benefits. Imperial appealed the ALJ's decision to the BRB, which affirmed the ALJ's determinations. This appeal followed.

II.

In reviewing claims for benefits under the Black Lung Benefits Act, we must determine whether an ALJ's determinations are sup-

_____

[2] The responsible operator is the miner's employer who is found liable for any benefits awarded. See id. at §§ 725.492-725.493 (1997).
[3] The Supreme Court invalidated the "true doubt" rule in Director, OWCP v. Greenwich Collieries, 512 U.S. 267 (1994).

3

ported by substantial evidence.**4** "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."**5** A review for substantial evidence does not involve re-weighing conflicting evidence, making credibility determinations, or substituting our judgment for that of the ALJ.**6**

A.

The issue of Tichenor's eligibility for federal black lung benefits is not in dispute. Indeed, all parties agree that the evidence establishes the existence of complicated pneumoconiosis. Rather, Imperial contends that substantial evidence does not support the ALJ's determination that Tichenor developed complicated pneumoconiosis prior to leaving employment with Imperial in June 1978. We disagree.

The ALJ determined that the medical evidence contained in the record indicated that Tichenor's pneumoconiosis followed a progressive course from simple to complicated pneumoconiosis. First, the ALJ analyzed the April 26, 1975, examination report of Dr. E.S. Hamilton, Tichenor's treating physician. In this report, Dr. Hamilton opined that Tichenor was "`permanently disabled, unemployable in regular industry, and with questionable rehabilitation.'"**7** Second, the ALJ analyzed the physicians' reports based upon three chest x-rays taken during the time Tichenor worked for Imperial. **8** The first of these x-rays was taken on August 5, 1971. Dr. W.K.C. Morgan interpreted the film as demonstrating complicated pneumoconiosis. Two other doctors, both "B"-readers,**9** interpreted simple pneumoconiosis.

---

**4** **See Dehue Coal Co. v. Ballard** , 65 F.3d 1189, 1193 (4th Cir. 1995) (citation omitted).
**5** **Consolidated Edison Co. v. NLRB** , 305 U.S. 197, 229 (1938) (citation omitted).
**6** **See Craig v. Chater**, 76 F.3d 585, 589 (4th Cir. 1996) (citation omitted).
**7** J.A. at 161 (ALJ quoting from Dr. Hamilton's report).
**8** Tichenor also had three x-rays taken after he left Imperial. Every doctor who interpreted these films reported complicated pneumoconiosis.
**9** B-readers are physicians who have proven proficiency in classifying x-rays for changes in pneumoconiosis, having passed a certified examination sponsored by NIOSH.

Although the ALJ did not give Dr. Morgan's interpretation superior weight, he believed that it "pointedly introduce[d] the spectre of uncommon complicated pneumoconiosis which evolve[d] into a reality within the evidence in this case."[10] Based upon the second x-ray, taken July 7, 1976, Dr. G. Jacobson, a B-reader, identified complicated pneumoconiosis. However, Dr. W.G. Hayes, another B-reader, interpreted this same film as showing advanced simple pneumoconiosis. Finally, Dr. Hayes and Dr. Charles W. Nelson interpreted the third x-ray, taken July 9, 1976, as demonstrating advanced simple pneumoconiosis.

We believe that the April 26, 1975, report of Tichenor's treating physician, in conjunction with the July 7, 1976, x-ray report of Dr. Jacobson, a B-reader, constitutes substantial evidence that the onset of Tichenor's complicated pneumoconiosis was July 7, 1976. As the ALJ stated:

> Dr. Hamilton as the treating and examining physician, commands a unique position in the composition of the total evidence in this case and his reasoned opinion soundly rests upon clinical findings which have not been contradicted and are firmly supportive of his opinion that [Tichenor] was totally disabled due to advanced, if not complicated pneumoconiosis . . . . The evidenced advance and progress of the disease removes the possibility that Dr. Jacobson, a B reader, made an erroneous interpretation of the July 7, 1976 film.[11]

Accordingly, we decline to disturb the ALJ's determination on this ground.

B.

Imperial makes the additional argument that, even if Tichenor's complicated pneumoconiosis developed as of July 7, 1976, Hansford bears financial responsibility for this claim because Hansford

_____

[10] J.A. at 159.

[11] Id. at 163.

5

employed Tichenor after Imperial. "It is generally recognized that under the doctrine of exhaustion of administrative remedies a court should not consider an argument which has not been raised in the agency proceedings which preceded the appeal, absent unusual circumstances."**12** Therefore, we decline to address this contention, which was not raised in the proceedings below.**13**

III.

Based upon the foregoing, we hold that substantial evidence supports the ALJ's determinations that the onset of Tichenor's complicated pneumoconiosis was July 7, 1976, and that Imperial is the responsible operator. Accordingly, we decline to disturb the BRB's order affirming the ALJ's decision. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

_____

**12** **Director, OWCP v. North Am. Coal Corp.**, 626 F.2d 1137, 1143 (3d Cir. 1980).
**13** Having determined that Imperial is the sole responsible operator, we similarly decline to address the argument, advanced by the West Virginia Coal-Workers' Pneumoconiosis Fund, that we lack subject matter jurisdiction to consider the responsible operator issue because Imperial allegedly accepted liability for this claim in 1979.