LEGG, Chief District Judge:
In this case we address whether medical evidence offered for the sole purpose of disproving liability constitutes “documentary evidence” under § 725.456(b)(1) of the regulations implementing the Black Lung Benefits Act. Relying on the plain language and history of that regulation, we conclude that it does. Accordingly, we affirm the order of the Benefits Review Board naming petitioner Marfork Coal Co. as the responsible operator liable for the payment of benefits to respondent Roger L. Weis. We also affirm the Board’s conclusion that Weis’s benefits are payable as of April 1, 1996.
I.
A.
Coal miners are prone to develop pneumoconiosis, commonly known as black lung disease. The Black Lung Benefits Act (“the Act”), 30 U.S.C. § 901 et. seq., provides benefits to coal miners who have been totally disabled by pneumoconiosis, and to the surviving dependents of miners who die of the disease.
The Act places liability for the payment of benefits upon the “responsible” coal operator.[1] Under the regulations implementing the Act, the “responsible operator” is usually the coal company that most recently employed the miner for at least one year.[2] There are a number of grounds, however, upon which the most recent employer can avoid liability. For example, the operator may prove that it did not cause, contribute to, or aggravate the miner’s pneumoconiosis.[3] The operator may establish that it lacks the means to pay, in which case the Black Lung Disability Trust Fund will pay.[4] The operator may also prove that the miner was already totally disabled by pneumoconiosis before he was hired.[5]
The Department of Labor (“DOL”) is responsible for the administrative adjudication of black lung cases. Generally speaking, the litigation involves three stages. A miner or his survivor first files a claim with a “district director” from the *231 DOL’s Office of Workers’ Compensation Programs. After investigating the claim, the district director determines whether the claimant is eligible for benefits, and, if so, which operator is presumptively responsible.[6] Any party may appeal the district director’s decision to the Office of Administrative Law Judges (“OALJ”).[7] Thereafter, appeals are to the DOL’s Benefits Review Board (“the Board”), and then to the Court of Appeals for the circuit in which the miner’s “injury” occurred.[8]
In 2000, the DOL revamped its rules to streamline the handling of black lung cases. One thrust of the new rules is to make conclusive a district director’s determination of the “responsible operator” liable for payments. If the district director’s determination is overturned on appeal, the case is not remanded to correct the error. Instead, benefits are paid by the Black Lung Disability Trust Fund (“the Fund”). This is the case even if the actual responsible operator can be identified.[9]
To protect the Fund from unwarranted liability, the rules require the parties to present to the district director all documentary evidence concerning which operator is liable.[10] Absent exceptional circumstances, new documentary evidence pertaining to liability may not be thereafter introduced into the record.[11] With this background in mind, we turn to the facts.
B.
Roger L. Weis worked in the coal mines of West Virginia for approximately thirty-six years. Most recently, Weis worked for Marfork Coal Co. (“Marfork”), which employed him from November 1, 1994 to August 1, 2006.[12]
On July 9, 2002, Weis filed a claim for black lung benefits with a DOL district director located in Charleston, West Virginia. On August 23, 2002, the district director notified Marfork of Weis’s claim and identified Marfork as a potentially liable coal operator.[13] 20 C.F.R. § 725.407. The regulations required Marfork to file a response in which it either accepted or contested that identification. Id. § 725.408(a)(1). On September 4, 2002, Marfork contested liability.[14]
The district director ordered a complete pulmonary evaluation of Weis. Id. §§ 725.405(b); 725.406(b). On September 24, 2002, Dr. Manu Patel diagnosed Weis with complicated pneumoconiosis, a rare and serious form of black lung disease.[15]
On January 28, 2003, the district director issued a “Schedule for the Submis *232 sion of Additional Evidence” (“the Schedule”). Id. § 725.410(a). The Schedule laid out the district director’s preliminary conclusion that Weis was entitled to benefits because of his disease.[16] It gave Marfork thirty days to accept or contest that finding. J.A. 51. It also gave the parties sixty days to submit additional medical evidence concerning Weis’s entitlement. Under the regulations, the parties could submit entitlement evidence either to the district director or thereafter to an ALJ if a formal hearing was requested. J.A. 52.
In the Schedule, the district director also preliminarily designated Marfork as the responsible operator. J.A. 51. It gave Marfork thirty days to accept or contest this finding.[17] J.A. 52. It also gave Mar-fork sixty days in which to submit any “documentary evidence relevant to liability.” Id. Such evidence was to include any evidence “relevant to whether another potentially liable operator should have been designated the responsible operator.” J.A. 53. The Schedule cautioned that “[a]bsent a showing of extraordinary circumstances, no documentary evidence relevant to liability, or testimony of a witness not identified at this stage of the proceedings, may be admitted into the record once a case is referred to the [OALJ].” Id.
On February 11, 2003, Marfork submitted a DOL Operator Response form to the district director in which it accepted its designation as the responsible operator. J.A. 65. It contested, however, that Weis was entitled to benefits. Id. Marfork did not submit evidence of any kind to the district director.
Weis, however, did submit additional entitlement evidence to the district director. He proffered two x-ray interpretations by Dr. John Parker, who compared x-rays of Weis’s lungs from 1971, 1974, 1980, 1996, 1999, 2000, and 2003. Parker diagnosed Weis with “progressive massive fibrosis,” another name for complicated pneumoconiosis.[18] Parker noted that the disease had “progressed” between 1996 and 2003. J.A. 14.
On July 7, 2003, the district director issued a proposed order awarding Weis benefits and holding Marfork liable. Mar-fork timely requested a formal hearing before an ALJ. On September 18, 2003 the case was referred to the OALJ.[19]
In preparation for a hearing before the ALJ, Marfork had Weis examined by Dr. Robert Crisalli. The examination suggested that Weis was indeed suffering from complicated pneumoconiosis. J.A. J.A. 354; 364. This revelation prompted Mar-fork to start “scouring hospital admissions, [as well as] State claims, to find out if there were any earlier x-rays, which is standard procedure in our [Marfork’s attorneys’] office.” Id. As part of this search, Marfork, in August 2004, discovered a 1992 x-ray of Weis’s lungs indicating that Weis was then suffering from the *233 disease, a full two years before Marfork hired him. This medical evidence was significant. If Weis had developed complicated pneumoconiosis before Marfork limed him, another operator would be solely liable for Weis’s benefits.[20]
On October 19, 2004, the ALJ held a hearing. In addition to Weis and Marfork, the Director of the Office of Workers’ Compensation Programs (the “OWCP Director”) was a party.[21] The OWCP Director, who acts as trustee for the Black Lung Benefits Fund, is responsible for conserving its assets.[22] Marfork offered into evidence reports from three doctors who opined, based on the x-ray, that Weis was disabled before he came to work for Marfork.[23] The reports were admitted without objection.
In light of the new evidence, the ALJ called for post-hearing briefs. In his brief, the OWCP Director contended that the medical reports should be excluded. Under 20 C.F.R. § 725.456(b)(1), he argued, Marfork was required to have presented all evidence bearing on liability to the district director. Accordingly, Marfork could introduce the evidence now only by showing extraordinary circumstances. Because the x-ray was waiting to be found, no such circumstances existed.
The ALJ agreed. In a written opinion dated June 27, 2005, he excluded Mar-fork’s evidence, awarded benefits to Weis,[24] and held Marfork liable. He further concluded that Marfork had failed to develop its exculpatory evidence in a timely fashion.[25]
On August 19, 2005, Marfork appealed to the Board. On June 30, 2006, the Board affirmed in a split decision. The majority held that medical records are included in the term “documentary evidence” referenced in § 725.456(b)(1). J.A. 395. The Board also affirmed the ALJ’s finding that Marfork had failed to prove “extraordinary circumstances.” J.A. 397.
Marfork timely filed the instant petition for review. We have jurisdiction under 33 U.S.C. § 921(c). For the reasons stated below, we deny Marfork’s petition and affirm the decision of the Board.
II.
On a petition for review of an order of the Board, we independently review the *234 record. Daniels Co., Inc., v. Mitchell, 479 F.3d 321, 329 (4th Cir.2007) (citations omitted). We review the Board’s conclusions of law de novo. Id. We determine whether substantial evidence exists to support the ALJ’s findings of fact. Consolidation Coal Co. v. Williams, 453 F.3d 609, 614 (4th Cir.2006).[26]
III.
This case involves the interpretation of § 725.456(b)(1), which governs the admissibility of “documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator.” Unless submitted to the district director, such documentary evidence “shall not be admitted ... in the absence of extraordinary circumstances.” Id. The full text of the section is as follows:
Documentary evidence pertaining to the liability of a potentially liable operator and/or the identification of a responsible operator which was not submitted to the district director shall not be admitted into the hearing record in the absence of extraordinary circumstances.
Id.[27]
Medical evidence concerning entitlement to benefits is treated differently. Id. § 725.456(b)(2). Entitlement evidence may be offered at either the district director or the ALJ stage. Id. The controversy in the instant case arose because the medical opinions concerning the 1992 x-ray are pertinent both to Weis’s entitlement to benefits and to Marfork’s liability.
Marfork would read into § 725.456(b)(1) an implied exception for medical evidence that pertains to liability. According to Marfork, the regulation would now read, “documentary evidence pertaining to ... liability, except for medical evidence.” The OWCP Director disagrees, maintaining that the regulation is not only clear, but that the DOL intended it to apply to all evidence, medical or otherwise, that bears upon liability.
We agree with the Director. His interpretation conforms to the plain meaning of the regulation, which is unqualified.[28] His interpretation is also supported by the regulatory history.
The DOL revised the Act’s regulations in 2000. One of the Department’s objectives was to simplify and streamline the processing of claims at the district director level. 65 Fed.Reg. 79990.
An initial draft of the regulations would have required both liability and entitle *235 ment evidence to be presented to the district director.[29] Id. at 79989. The Department observed that this proposal would end the then-current practice of delaying the development of evidence on both issues until the OALJ stage. Id.
Eventually, the DOL decided not to require all medical eligibility evidence to be submitted to the district director. Id. at 79990. The DOL did, however, implement its proposal with respect to liability evidence. This decision is clearly stated in the Federal Register. “Any such evidence that was not submitted to the district director could be submitted to the ALJ only upon a showing of extraordinary circumstances.” Id.
As the Federal Register explains, serious disputes about the identity of the responsible operator arise in fewer than ten percent of all claims. Id. at 79989; 79991; 79999-80000. When such disputes do arise, however, the DOL expressly intended to resolve them at the district director stage. Id. The district director is required to select one and only one responsible operator, and he is “permitted to refer a case to the [OALJ] with only one designated responsible operator as a party to the claim.” Id. at 79990.
It is important that the district director make the right decision. In the event that the operator he designates is later adjudicated not liable, the Fund will pay any benefit award. Id. There is no remand. Id.
The Federal Register devotes considerable space to explaining that under the 2000 changes the district director’s initial determination is unassailable even if wrong. Id. “The Department intends that once a claim is referred to the [OALJ], the Department shall not be able to impose liability for that claim on any operator other than the one formally designated by the district director, whether through remand by the [ALJ] or through a modification of a finally awarded claim.” Id.
For these reasons, the DOL obliged operators to develop liability evidence at the district director stage, the earliest stage of claims processing. Id. at 79999-80000. Operators must “submit evidence regarding their [own] potential liability for the claim.” Id. at 79999. Moreover, they must develop and submit “any evidence relevant to the liability of another party.” Id. (emphasis added). This arms the district director with sufficient information to determine accurately which operator is liable, before the case is referred to the OALJ and before all other operators are dismissed from the case. Id. at 80000.
Given this regulatory history, it is implausible to suppose that the DOL crafted a system that deprives district directors of critical documentary evidence on the issue of liability. Disputes over the identification of the responsible operator may be infrequent. Nonetheless, as the facts of this case demonstrate, such disputes do arise and medical evidence can be dispositive. Under Marfork’s interpretation, an operator would not be required to investigate the medical issues pertinent to liability until after the liability Rubicon had been crossed. The DOL clearly did not intend such a result.
Marfork contends that the Director’s interpretation would impose an unreasonable burden on mine owners. Because liability and entitlement evidence can be intertwined, Marfork argues, mine operators would be required to develop and present both types of evidence to the district director in every case. Under the Schedule, *236 the operator is allowed only sixty days to present liability evidence to the district director. Marfork contends that this time period is insufficient because black lung cases can often be medically complex.
This argument is unpersuasive. In the DOL’s experience, the identity of the responsible operator is infrequently in dispute. Thus, the operator would be required to present medical evidence to the district director in only in a small number of cases.
As to the time pressure, the sixty day time limit can be extended for good cause shown. 20 C.F.R. § 725.428. Nothing in the record suggests that district directors would deny mine operators ample time to develop relevant medical evidence pertaining to liability.
IV.
Marfork next argues that the ALJ committed error by finding that Marfork had not shown extraordinary circumstances. We disagree.
The ALJ carefully analyzed this issue. As he determined, Marfork was on notice that Weis may have developed complicated pneumoconiosis before 1994, when he was hired. Complicated pneumoconiosis is a progressive disease that develops over time. When Marfork hired Weis in 1994, he had been working in coal mines for other operators for decades. When Weis applied for black lung benefits, his application, which was sent to Marfork, stated that he had previously received state workers’ compensation benefits for black lung disease on three occasions.[30]
At the district director stage, Weis produced evidence that he had been diagnosed with complicated pneumoconiosis.[31] Based on these and other facts, the ALJ found that Marfork had failed to develop evidence clearly suggesting that another operator might be liable. On appeal, the Board agreed.[32]
We find nothing in the record to disturb the ALJ’s conclusion. Marfork did not begin investigating the case until the ALJ stage. When Dr. Crisalli all but confirmed the diagnosis of complicated pneumoconiosis, Marfork belatedly sprang into action, scouring hospitals for medical records and ultimately tracking down the crucial 1992 x-ray. J.A. 354; 364. Extraordinary circumstances might exist if the x-ray were hidden or could not have been located at the district director stage. Such is not the case here. The x-ray was waiting to the found. Accordingly, we affirm the ALJ’s finding that Marfork failed to show extraordinary circumstances.
V.
Marfork makes two additional arguments, each of which we need address only briefly.
*237 A.
In the Act, Congress stated its intent to impose liability only on the responsible operator.[33] Based on the 1992 x-ray, it now appears that Weis contracted complicated pneumoconiosis while employed by another mine operator.[34] In light of this discovery, Marfork contends that holding it liable would violate the intent of Congress.
This argument fails because it relies on evidence that was properly excluded from the record. The department has the authority to write regulations governing the orderly litigation of black lung cases. Those regulations presume that the operator who last employed the miner for more than a year is responsible.[35] Operators are provided a fair chance, however, to introduce exculpatory evidence into the record. Marfork missed its chance. Because the medical evaluations of the 1992 x-ray were not presented to the district director, the evidence Marfork relies upon is outside the record. For purposes of this litigation it does not exist. Based on the properly admitted administrative record, Marfork is the responsible operator and the intent of the Act has not been violated.
B.
Marfork next faults the ALJ for failing to admit the 1992 medical evidence for the purpose of establishing the date of onset of Weis’s complicated pneumoconiosis. In order to properly compensate Weis for his injuries, Marfork contends, a remand is necessary to consider the newly discovered evidence. Because the ALJ would necessarily consider the 1992 evidence to establish date of onset, Marfork asserts that it would be irrational to ignore the same evidence for the purpose of imposing liability.
Weis’s entitlement to benefits, however, is an issue for Weis — not Marfork — to raise. Indeed, Weis has attempted to challenge the ALJ’s date of onset determination before this Court.[36] He is precluded from doing so, however, by the doctrine of administrative waiver. Although named as a respondent when Marfoi'k appealed the ALJ’s liability determination to the Board, Weis failed to challenge the ALJ’s subsidiary conclusion establishing month of onset. Weis filed no brief and declined to appear at oral argument before the Board. J.A. 335; 386. Accordingly, he has waived his entitlement argument for consideration by this Court.[37] See Beth- *238 Energy Mines v. Cunningham, 104 Fed. Appx. 881 (4th Cir.2004) (Employer waived statute of limitations objection by failing to present it to Board); Armco, Inc. v. Martin, 277 F.3d 468, 476 (Declining, on grounds of administrative waiver, to address arguments not presented to Board).
VI.
We conclude that the Board correctly determined that medical evidence offered only to disprove liability constitutes “documentary evidence” within the meaning of § 725.456(b)(1). We also conclude that the Board properly affirmed the exclusion of Marfork’s medical evidence from the administrative record. Accordingly, we affirm the Board’s decision and deny Mar-fork’s petition for review.

AFFIRMED.

. Daniels Co., Inc. v. Mitchell, 479 F.3d 321, 329 (4th Cir.2007) (quoting Armco, Inc. v. Martin, 277 F.3d 468, 473 (4th Cir.2002)).

. 20 C.F.R. § 725.495(a)(1) (2007).

. Id. § 725.494(a).

. Id. § 725.495(c)(1).

. See, e.g., Truitt v. North American Coal Co., 2 BLR 1-199 (1979), aff’d sub nom. Director, OWCP v. North American Coal Co., 626 F.2d 1137 (3d Cir.1980).

. See National Mining Ass'n v. Dept. of Labor, 292 F.3d 849, 854 (D.C.Cir.2002) (citing 20 C.F.R. §§ 725.301-725.423).

. Id. (citing 20 C.F.R. §§ 725.450-725.480).

. Id. (citing 20 C.F.R. § 725.481; § 725.482) (citation omitted).

. 20 C.F.R. §§ 725.407(d); 725.418(d); 65 Fed. Reg. 79990; 79999-80000 (Dec. 20, 2000) (all citations will be to the Dec. 20, 2000 Federal Register).

. Id.

. 20 C.F.R. § 725.456(b)(1).

. Weis retired on August 1, 2006.

. See 20 C.F.R. §§ 725.408; 725.494.

. In support of its position, Marfork had ninety days in which to submit evidence concerning its employment of Weis and its status as a potentially liable operator. Id. § 725.408(a)(2). Marfork did not submit any evidence.

. Coal worker’s pneumoconiosis is customarily classified as either "simple" or "complicated." Simple pneumoconiosis seldom results in significant respiratory impairment. Complicated pneumoconiosis, which is far more serious, involves progressive massive fibrosis as a reaction to inhaled coal dust. Complicated pneumoconiosis usually causes significant lung impairment and breathing difficulties. It may induce death or contrib *232 ute to death by other causes. See Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 7, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) (footnotes omitted); N. Leroy Lapp, A Lawyer’s Medical Guide to Black Lung Litigation, 83 W. Va. L.Rev. 721, 729-781 (1981).

. A miner with complicated pneumoconiosis is conclusively presumed to be totally disabled. 20C.F.R. §§ 718.203(b); 718.304.

. An operator that fails to respond to the Schedule is deemed to have accepted its designation and to have waived its right to contest liability in any future proceedings. J.A. 52.

. See Lisa Lee Mines v. Director, OWCP, 86 F.3d 1358, 1359-60 (4th Cir.1996) (en banc).

. The district director prepared a list of contested issues for the hearing. J.A. 111-113. The issues focused on entitlement. "Responsible operator” is not marked as a contested issue.

. See, e.g., Truitt v. North American Coal Co., 2 BLR 1-199 (1979), aff’d sub. nom. Director, OWCP v. North American Coal Co., 626 F.2d 1137 (3d Cir.1980).

. Weis and the OWCP Director are the two respondents in this proceeding. The OWCP Director, who administers the Black Lung Benefits Program, 20 C.F.R. § 701.202(f) (2007), entered the case when Marfork notified him that it contested liability. J.A. 159.

. See, e.g., Truitt, 2 BLR 1-202.

. Drs. Wiot, Meyer, and Hippensteel all read the x-ray for the company. All three concluded that the x-ray was positive for complicated pneumoconiosis.

. The ALJ determined that Weis's benefits are payable as of April 1996, the date that admissible x-ray evidence showed that Weis first suffered from complicated pneumoconiosis. Id. § 725.503(b).

. The ALJ made two additional findings that we must briefly address. The ALJ found that Marfork could not contest its status as a potentially liable operator because it had failed to submit evidence within ninety days of receiving notice of Weis's claim. J.A. 230; see 20 C.F.R. § 725.408(b)(1). The AO also found that Marfork had waived its right to contest its liability under 20 C.F.R. § 725.412(a)(2) because it had accepted its designation as responsible operator before the district director. J.A. 230. The Board did not rely on either ground as support for its decision, however. Accordingly, neither finding is presently before us. See Grigg v. Director, OWCP, 28 F.3d 416, 418 (4th Cir.1994) ("We confine our review to the grounds upon which the Board based its decision.").

. Substantial evidence is " ‘more than a mere scintilla.' " Consolidation Coal Co. v. Williams, 453 F.3d 609, 614 (4th Cir.2006) (citations omitted). Specifically, it is “such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” Id. at 615 (internal quotation marks and citations omitted).

. Neither the regulations nor the regulatory history found in the Federal Register define the term "documentary evidence.”

. Because the black lung regulations are administered by the OWCP Director, his interpretation is entitled to "substantial deference 'unless it is plainly erroneous or inconsistent with the regulation.’ ” Mullins Coal Co. v. Director, OWCP, 484 U.S. 135, 159, 108 S.Ct. 427, 98 L.Ed.2d 450 (1987) (citing Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945)); see Doss v. Director, OWCP, 53 F.3d 654, 658 (4th Cir.1995) (citing and applying Mullins). This rule of deference applies to an interpretation contained in a brief, including the brief that the OWCP Director filed in the instant case. See, e.g., Auer v. Robbins, 519 U.S. 452, 461-62, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997). As our discussion above makes clear, we find the OWCP Director's interpretation to be neither plainly erroneous nor inconsistent with the regulation.

. The draft regulation would have defined documentary evidence as "evidence relevant to operator liability as well as all medical evidence relevant to a claimant's eligibility[.]”

. On his application, Weis disclosed that West Virginia had awarded him state benefits in 1992, 2000, and 2002. J.A. 2.

. The Schedule contained Dr. Patel’s diagnosis of complicated pneumoconiosis. Pursuant to the Schedule, Weis submitted the x-ray readings by Drs. Parker and Proto. Dr. Parker’s report explicitly stated that his examination of the x-rays dated 1971, 1974, 1980, 1996, 1999, 2000, and 2003 revealed "advanced dust related disease — progressive massive fibrosis,” which was seen in 1996, 1999, 2000, 2003, and which "has progressed [from] 1996[to] 2003.” J.A. 14.

. In affirming the AU's decision, the Board correctly noted that Marfork never provided any explanation to the ALJ why it had failed to develop its evidence at the district director stage. J.A. 397.

. Marfork cites § 932 of the Act, which provides that coal mine operators are responsible for paying benefits to miners whose death or total disability due to black lung disease arose out of employment in the operator's mine.

. Marfork avers that Weis’s employer in 1992, Maben Energy Corporation, went bankrupt, and that this is a case where the Fund should be liable for benefits. See 20 C.F.R. § 725.495(a)(4).

. 20 C.F.R. § 725.495.

. See Resp’t's Br. at 2. ("The [Board] erred only in confirming the ALJ's determination that the onset of permanent disability in this case was April 1, 1996.”)

. In addition, Weis’s attempt to appeal to this Court is barred by the regulations governing proceedings before the Board. Once Marfork appealed the ALJ’s liability determination, Weis, as a prevailing party, was required to file a cross-appeal in order to alter or amend the result of the proceedings before the ALJ. See 20 C.F.R. § 802.201(a)(2); King v. Tennessee Consolidated Coal Co., 6 BLR 1-87 (Ben.Rev.Bd.1983) (Cross-appeal required where "prevailing party” seeks to alter judgment below); accord Malcomb v. Island Creek Coal Co., 15 F.3d 364, 369 (4th Cir.1994) (Argument made without cross-appeal must support ALJ’s decision, but not necessarily his reasoning). Although Weis’s entitlement argument would have precisely this effect, he declined file a cross-appeal to the Board. Having failed to comply with the Board's regulations, Weis is therefore precluded from objecting to the ALJ’s conclusion establishing date of onset.